Filed 5/11/23  In re J.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| | D081508 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520671) |
| v. | |
| L.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Bonnie M. Dumanis, Judge.  Conditionally reversed and remanded with directions.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

L.M. (Mother) appeals the juvenile court's order terminating her parental rights to her daughter, J.M., under Welfare and Institutions Code[1] section 366.26. Mother's sole claim is that the San Diego County Health and Human Services Agency (Agency) did not comply with its inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and Welfare and Institutions Code section 224.2. The Agency concedes that its inquiry was deficient and that a limited remand is appropriate, and the parties stipulate to the immediate issuance of the remittitur. We accept the Agency's concession and the parties' joint stipulation, conditionally reverse the order, and remand for the limited purpose of compliance with ICWA.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2021, the Agency petitioned the juvenile court under section 300, subdivisions (a) and (b) on behalf of four-year-old J.M. The Agency alleged that Mother physically abused J.M. with a belt and failed to protect J.M. from Mother's boyfriend, who burned J.M. with a cooking tool and brandished a gun at her. The juvenile court sustained the petition, declared J.M. a dependent, and detained her in out-of-home care.

During Mother's interview with the Agency, she denied having any Native American ancestry. At the subsequent detention hearing, she again denied having any Native American ancestry and stated that Jo.F. (alleged father) also did not have Native American ancestry. Although the juvenile

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Because Mother's only contention on appeal concerns ICWA, we limit our factual background accordingly.

court ordered Mother to complete a "Parental Notification of Indian Status" form (ICWA-020 form), no ICWA-020 form was ever filed.

The Agency's reports indicate that it spoke with several of alleged father's relatives throughout the dependency proceedings. According to the ICWA-010 form completed by the Agency in March 2021, the Agency asked alleged father's mother (paternal grandmother) about J.M.'s potential "Indian status," and she gave the Agency "no reason to believe [J.M.] is or may be an Indian child." The Agency also spoke with alleged father's sisters (paternal aunts), Lau.J.A., Lou.J.A., and J.A. Although paternal aunt Lau.J.A. denied having any Native American ancestry in her family, the record is ambiguous about whether she is the same aunt referenced by the similar names of Lou.J.A. and J.F., neither of whom are documented as having been asked about ICWA. The Agency additionally spoke with another paternal aunt, E.G., but again, the record does not indicate if she was asked about J.M.'s potential Native American ancestry.

As for maternal relatives, the Agency's reports state that it interviewed maternal aunt, E.C., about placement, but there is no indication it asked her about J.M.'s potential Native American ancestry. The Agency also spoke with maternal grandmother, who denied having any Native American ancestry in her family.

As of late November 2022, alleged father had not appeared at any dependency hearings and the Agency had not been able to reach him, despite speaking with two of his sisters and paternal grandmother.

At the January 23, 2023 section 366.26 hearing, the juvenile court found without prejudice that ICWA did not apply, terminated parental rights, and ordered adoption as J.M.'s permanent plan. Mother appeals that order, challenging only the juvenile court's finding that ICWA does not apply.

DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) First, the Agency's duty of initial inquiry requires it to "ask all involved persons whether the child may be an Indian child." (*D.S.,* at p. 1052.) "If [the] child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," this duty includes "asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . ." (§ 224.2, subd. (b), italics added.)[3] "Second, if that initial inquiry creates a 'reason to *believe*' the child

---

3    Section 306, subdivision (a)(1) provides that a county welfare department may receive and maintain temporary custody of a child who is described in section 300 and who has been "delivered by a peace officer." Section 306, subdivision (a)(2) provides that a county welfare department may take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent under section 300, or who the social worker has reasonable cause to believe is a person described in section 300, subdivision (b) or (g), and the social worker has reasonable cause to believe the child has an immediate need for medical care, or is in immediate danger of physical or sexual abuse, or the physical environment poses an immediate threat to the child's health or safety.

4

is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of [ICWA]].)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S., supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

Mother challenges only the sufficiency of the initial inquiry and contends substantial evidence does not support the juvenile court's finding that ICWA did not apply. Specifically, she complains that the Agency failed to conduct ICWA inquiries with alleged father's relatives (paternal

---

The record here does not definitively show whether the Agency took temporary custody of J.M. pursuant to section 306. If it did not, then the Agency's duty to question extended family members imposed by section 224.2, subdivision (b) arguably was not triggered. (See *In re Robert F.* (2023) 90 Cal.App.5th 492, 504 [duty to inquire of extended family members under section 224.2, subdivision (b) is triggered only when child is taken into temporary emergency custody under section 306].) Because the record is not clear on the matter and the parties have not raised the issue, we assume without deciding that the Agency took temporary custody of J.M. pursuant to section 306 and therefore had a duty to question extended family members about her Native American ancestry.

grandmother and a paternal aunt), maternal grandmother, and maternal aunt.  The Agency responds that it had no duty to conduct ICWA inquiries with alleged father's relatives and that it did, in fact, conduct an ICWA inquiry with maternal grandmother.  The Agency concedes, however, that it failed to conduct an ICWA inquiry with maternal aunt and that a limited remand is therefore warranted.  As discussed below, we agree with the Agency on all points and accept its concession as proper.

First, Mother's argument that the Agency had a duty to inquire of alleged father's relatives is belied by ICWA's statutory definition of "parent." Under ICWA, a "parent" is defined as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom."  (25 U.S.C. § 1903(9); see also § 1903(4), italics added [defining "Indian child" as "any unmarried person who is . . . eligible for membership in an Indian tribe and is the *biological child of a member of an Indian tribe*"].)  Importantly, the statute expressly excludes from the definition of "parent" an "unwed father where paternity has not been acknowledged or established."  (*Id.*, § 1903(9); see also *In re C.A.* (2018) 24 Cal.App.5th 511, 520 (*C.A.*) [definition of parent does not include an unwed father where paternity has not been acknowledged or established]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 (*E.G.*) ["[A]bsent a biological connection, the child cannot claim Indian heritage through the alleged father."].)  "[B]ecause the ICWA does not provide a standard for the acknowledgment or establishment of paternity, courts have resolved the issue under state law."  (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709.)  Thus, in California, an alleged father may acknowledge or establish paternity through blood testing (Fam. Code, § 7551) or by voluntarily signing a declaration of paternity filed with the child's birth certificate (Fam. Code,

6

§ 7571, subd. (a)). (*In re Daniel M.,* at pp. 708–709.)

Here, alleged father did not take any steps to acknowledge or establish his status as J.M.'s father—he never appeared in the dependency case, and there is no indication that he ever took a paternity test or signed a declaration of paternity filed with J.M.'s birth certificate. Moreover, despite the Agency's efforts to locate alleged father, including by contacting his mother and sister about his whereabouts, alleged father never materialized. Accordingly, we conclude alleged father was not J.M.'s "parent" for purposes of ICWA, and thus, the Agency did not have a duty to conduct ICWA inquiries with his family members.[4] (25 U.S.C. § 1903(9); see also *E.G.,* *supra,* 170 Cal.App.4th at p. 1532 ["Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father."]; (*C.A.,* *supra,* 24 Cal.App.5th at pp. 514–515 [ICWA notice to tribes identified by presumed father not required where father was presumed by marriage but was not the child's biological or adoptive father.].)

Next, Mother alleges that the Agency neglected to conduct an ICWA inquiry with maternal grandmother. But she is again mistaken. The record reflects that the Agency interviewed maternal grandmother, who "denied having any Native American ancestry in her family."

Finally, Mother contends and the Agency concedes that the Agency failed to conduct an ICWA inquiry with maternal aunt E.C., despite being in contact with her during the dependency proceedings. Because aunts qualify

---

[4] Even assuming the Agency did have such a duty, the record shows the Agency complied with its duty at least as to paternal grandmother and one paternal aunt, Lau.J.A.

7

as "extended family members" under ICWA, the Agency's concession is proper.[5] (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).) In addition, our review of the record indicates that J.M. has several other maternal aunts E.M., D.M., and A.M. and at least one maternal uncle S.M. Thus, to the extent the Agency on remand can contact maternal aunts and maternal uncles who qualify as "extended family members," it should ask them about J.M.'s potential Native American ancestry.

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under § 224.3). If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that J.M. is an Indian child, the order terminating parental

---

[5] Mother additionally complains that "no ICWA-020 forms were ever filed with the juvenile court" while also admitting that she was ordered to file an ICWA-020 form. Because Mother offers no authority or argument on this point, it is abandoned. (See e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 994 [presumption casts burden on appellant to present argument and authority on each point; otherwise, the point is deemed abandoned].) Regardless, we conclude the juvenile court satisfied its duty under California Rules of Court, rule 5.481, subd. (a)(2)(C) by ordering Mother to complete an ICWA-020 form, which she failed to do. (See Cal. Rules of Court, rule 5.481, subd. (a)(2)(C) [requiring the juvenile court, at a parent's first appearance in a dependency case, to "[o]rder the parent, if available, to complete a *Parental Notification of Indian Status* (form ICWA-020)"].) To the extent Mother contends the court failed to order alleged father to complete an ICWA-020 form, she is incorrect. Alleged father was not "available," as evidenced by the record showing the Agency's ongoing efforts to locate and speak with him. (See *id.*, italics added [requiring juvenile court to "[o]rder the parent, *if available*, to complete a [ICWA-020 form]".) And, as discussed previously, he is not a "parent" for purposes of ICWA.

rights shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know J.M. is an Indian child, the juvenile court shall proceed accordingly. The remittitur shall issue immediately.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.